## Warwick Iron Company, Plff. in Err., v. First National Bank of Honeybrook.

The vendor's retention of charcoal blooms for thirteen months after sale is unreasonable, and renders them subject to execution at the instance of his judgment creditors.

(Argued February 6, 1888.    Decided March 19, 1888.)

July Term, 1886, No. 146, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.    Error to the Common Pleas of Chester County to review a judgment on a verdict for the defendant in sheriff's interpleader, October term, 1885, No. 62.    Affirmed.

The facts as they appeared from the record and at the trial were stated in the charge of the court below, which was as follows:

This action is what is known as a sheriff's interpleader.    The evidence in the case shows that the First National Bank of Honeybrook, having a judgment against John Cornog, issued execution thereon; that the sheriff, by virtue thereof, levied upon certain property belonging to Mr. Cornog, and in his possession at his forge; that the Warwick Iron Company, the plaintiff in this suit, notified the sheriff that some of the property levied upon belonged to it, to wit, a certain quantity of pig iron and blooms, and forbade his selling it as the property of Mr. Cornog.

The sheriff reported to the court the fact that this claim had been made upon the property; and the court, after the usual hearing, directed an issue to be framed between the First National Bank of Honeybrook, the plaintiff in the execution, and the Warwick Iron Company, the claimant of the property, for the purpose of determining the ownership of the property levied upon by the sheriff.

In the issue that was thus framed, the Warwick Iron Company was made the plaintiff, and the First National Bank of Honeybrook, the defendant; and the question you are to de-

NOTE.—For the necessity of change of possession in the sale of personalty, see note to Chase v. Garrett, 1 Sad. Rep. 16.

termine is whether the Warwick Iron Company was the owner of certain pig iron and blooms, or whether they were subject to the levy as the property of Mr. Cornog, at the suit of the First National Bank of Honeybrook.

It appears from the evidence in the case that Mr. Cornog had been dealing with the Warwick Iron Company, in the purchase of pig iron, which he worked into blooms for his forge; that in the summer of 1884 he was largely indebted to it for pig iron; that the Warwick Iron Company, being desirous of effecting a settlement, had requested payment of Mr. Cornog; that, in a subsequent interview, Mr. Cornog said that he had not the money on hand with which to pay it, and declined to give it a judgment note, which it requested, but stated that he was willing to sell it the pig iron still remaining on hand, and the blooms he had made from the pig iron he had purchased from it.

In accordance with this understanding between the parties, several agreements were reduced to writing, all of which have been offered in evidence. Two of these agreements have reference to the sale of pig iron, and the other to the blooms.

The agreement in reference to the blooms was that they were to be delivered on the cars at the station on the railroad, at such time and in such quantities, to such parties, or otherwise, as the Warwick Iron Company should by letter direct.

The agreement relating to the pig iron was that Mr. Cornog should convert it into charcoal blooms, after first acknowledging its receipt from the Warwick Iron Company; that the blooms were to be delivered on the cars at Springton Station, in such quantities and billed to such parties, or otherwise, as the Warwick Iron Company should by letter direct, and that for this conversion of the pig iron and delivery of the blooms the Warwick Iron Company was to pay Mr. Cornog the sum of $20 for each ton of blooms so manufactured and delivered.

It also appears from the evidence that, at the time of this transaction, July, 1884, the iron market was not in good condition; that the Warwick Iron Company was not willing to sell blooms at the prices which then prevailed, and that the iron was allowed to remain in Mr. Cornog's possession from that time, without any sales having been made, until the time of the levy under the execution issued by the First National Bank of Honeybrook, on August 21, 1885, a period of over a year.

[In view of all the evidence in the case, I instruct you that,

so far as the blooms are concerned, there was no such change of possession as should have been made at the time of the transaction between the parties; that they remained in the possession of Mr. Cornog an unreasonable length of time, without any change of possession, or such a change of possession having taken place as is required by law; that the blooms having thus remained in the possession of Mr. Cornog, they were subject to the execution of his creditors, or that of the First National Bank of Honeybrook, and that your verdict, in respect to the blooms, should be for the defendant.] 1

It appears that the pig iron was purchased by the Warwick Iron Company, and that before it could be sold in the market, it had to be manufactured into blooms. The pig iron remained at the forge of Mr. Cornog, and it was his business to convert it into blooms.

It was perfectly proper that the parties should agree to allow the pig iron to remain at Mr. Cornog's forge, for the purpose of being converted into blooms. It was stored upon his premises, and it was not necessary to remove it from there; and therefore if that iron was left at the forge for the purpose of manufacture into blooms, to enable it to be sold in the market, the parties had the right to enter into such an agreement.

There is also evidence in the case showing that the plaintiff in the execution, the First National Bank of Honeybrook, had knowledge that the pig iron levied on by the sheriff had been sold by Mr. Cornog to the Warwick Iron Company. It appears that information of that fact was given to the bank soon after the sale to the Warwick Iron Company.

If you find that there was a bona fide sale of the pig iron by Mr. Cornog to the Warwick Iron Company, the agreement between the parties being that the pig iron should be left in the possession of Mr. Cornog for the purpose of manufacture into blooms, that the market at that time was unfavorable for the manufacture and sale of blooms, that the pig iron therefore continued to remain in the possession of Mr. Cornog until the time of the levy, and that the National Bank of Honeybrook received notice of the sale of the pig iron by Mr. Cornog to the Warwick Iron Company, I instruct you that there was no fraud in the transaction between the parties, and that under such a state of facts, the Warwick Iron Company, the plaintiff in this

issue, would be entitled to a verdict for the pig iron in controversy.

I have been requested by the defendant to instruct you upon the following points, *viz.*:

1. "Under the evidence in this case there was no such delivery and change of possession of the property in controversy, from Cornog to the Warwick Iron Company, as would be valid in law against the creditors of Cornog; and the verdict must be for the defendant."

In answer to this point [I instruct you that it is correct, so far as the blooms are concerned; but] 2, I disaffirm that portion relating to the pig iron.

The jury found for the defendant for the blooms and for the plaintiff for the pig iron. Judgment accordingly.

The assignments of error specified: 1, 2, The portions of the charge inclosed in brackets.

*William M. Hayes* and *Miller D. Evans,* for plaintiff in error.—In determining the kind of possession necessary to be given in a sale of chattels regard must be had not only to the character of the property, but also to the nature of the transaction, the position of the parties, and the intended use of the property. No such change of possession as will defeat the fair and honest object of the parties is required. Crawford v. Davis, 99 Pa. 576.

It is for the jury to determine whether the evidence of assumption of control by plaintiff was bona fide or merely colorable, and whether it was enough to give notice to the world. Parks v. Smith, 94 Pa. 46; Evans v. Scott, 89 Pa. 136.

In considering what is actual delivery, the nature of the property, and circumstances attending the sale, and whether the property is capable or not of easy delivery, must be taken into account. Barr v. Reitz, 53 Pa. 256.

Where, from the nature of the transaction, possession either could not be delivered at all, or, at least, without defeating fair and honest objects intended to be effected by the transaction, the case may be regarded as an exception to the rule. Born v. Shaw, 29 Pa. 288, 72 Am. Dec. 633.

The question is, Did the vendor do all that might be reasonably expected in the case of a real and honest sale? McKibbin v. Martin, 64 Pa. 352, 3 Am. Rep. 588.

A change of the location of the property is not, in all cases, essentially necessary. Due regard must be had to the character of the property, the nature of the transaction, the position of the parties, and the intended use of the property. Cessna v. Nimick, 113 Pa. 70, 4 Atl. 193.

*Alfred P. Reid,* for defendant in error.—Where there is a voluntary sale or transfer of personal property, the possession of that property must accompany and follow the sale in order to make it valid as against the creditors of the vendor. Whenever the subject of the sale is capable of actual delivery, the possession must accompany and follow the title. When the nature of the property will not admit of this, then it must be constructive, which shall endure for a reasonable time thereafter, until the party entitled to possession can reduce the property to his actual possession. When there is no such delivery or change of possession, the sale is fraudulent in law as to creditors, and the court is bound so to declare it. Clow v. Woods, 5 Serg. & R. 275, 9 Am. Dec. 346; Chase v. Ralston, 30 Pa. 541; McKibbin v. Martin, 64 Pa. 356, 3 Am. Rep. 588; Pearson v. Carter, 94 Pa. 159; Crowley v. Irwin, 1 Pennyp. 232; McMarlan v. English, 74 Pa. 300; Crawford v. Davis, 99 Pa. 578; Cessna v. Nimick, 113 Pa. 70, 4 Atl. 193.

Whether a sale of chattels, taking place between people living in the same house, or having business relations with each other which bring them together daily in the same place, is rendered fraudulent by a concurrent possession, is no longer a question of law for the court to pronounce upon; but it must be left to the jury to say whether there was actual fraud, considering the relations of the parties, and the character and situs of the property. Sauerwein v. Costigan, 41 Phila. Leg. Int. 16.

The separation of the property from the possession of the vendor must be at the time of the sale or within a reasonable time afterwards. McMarlan v. English, 74 Pa. 300; Carpenter v. Mayer, 5 Watts, 485.

In the latter case, six weeks was held to be an unreasonable time.

There was nothing in the character of the property which prevented delivery in a reasonable time. The blooms were manufactured for sale and delivery. They were removed without difficulty after this interpleader was perfected.

Where possession has been withheld from the vendee, pursuant to the terms of the agreement, some good reason for the arrangement beyond the convenience of the parties should appear. Born v. Shaw, 29 Pa. 292, 72 Am. Dec. 633.

The law requires a change of possession, actual or constructive. There was neither here. The contract shows that it was not the intention of the parties that possession should accompany and follow the sale at once. The sale was never consummated by delivery as contemplated and agreed upon. The law condemns such a transaction, irrespective of the motives of the parties, on the ground of public policy and as a protection to fair dealing.

Notice of a fraudulent transfer of property will not prevent a bona fide creditor from purchasing the goods so transferred, for an honest debt, or from taking them in execution. Stark v. Ward, 3 Pa. St. 328; Cadbury v. Nolen, 5 Pa. 320; Pritchett v. Jones, 4 Rawle, 260; Crowley v. Irwin, 1 Pennyp. 228.

However honest in conscience the transaction may have been between the parties, it was against the policy of the law and a legal fraud upon creditors. Steelwagon v. Jeffries, 44 Pa. 413.

PER CURIAM:

In this case we are asked to overturn the whole doctrine of constructive fraud in the sale of chattels, and as we are not prepared to do this we must affirm the judgment of the court below.

The judgment is affirmed.